IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:10-cr-117-WHA |
| ALEX TERRELL WILLIAMS | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pending before the Court is *Defendant's Motion to Suppress* (Doc. 12, filed October 13, 2010). The United States' filed its *Response to Motion to Suppress* (Doc. 16, filed October 29, 2010). After the November 2, 2010 evidentiary hearing and due consideration of briefs, arguments, and applicable law, the Magistrate Judge concludes the warrantless search passes Constitutional muster and recommends that the District Court **DENY** the motion to suppress.

**I. FACTUAL BACKGROUND AND MOTION TO SUPPRESS**

Former trooper Andy Sutley ("Sutley") and Officer Scott Edwards ("Edwards") testified at the evidentiary hearing. On October 18, 2005, at approximately 1:30 p.m., Drug Enforcement Administration (DEA) Special Agent Neill Thompson and other law enforcement officers used a confidential informant ("CI") to make a controlled purchase of narcotics from Alex Terrell Williams ("Williams" or "Defendant") in an apartment complex around 212 Eastdale South Road (near Interstate 85) between 1:06 and 1:25 p.m. After the purchase the officers continued to watch the apartment. Around 3:00 p.m., Williams and a

then-unknown female left the apartment for the first time after the controlled buy in a white Lincoln Navigator which Williams drove north on I-85 towards Atlanta, GA. Corporal Joe Herman, a HIDTA Agent, called then Trooper Sutley, described the car Williams was driving, and told him that Williams had just engaged in a narcotics transaction. Hermann told Sutley to look for the vehicle and conduct a traffic stop if he found probable cause to stop the car. Sutley found the car at approximately 3:22 p.m. Sutley conducted a traffic stop near mile marker 22 when he saw Williams was traveling 81 mph in a 70 mph zone and changed lanes without using his turn signal.

 Sutley walked up to the front passenger door and saw Andrea Davis in the front passenger seat and Williams behind the steering wheel. Williams gave Sutley his license and registration. Williams had a Texas license and the car was registered to someone else. Sutley could smell the odor of marijuana and alcohol, but could not pinpoint the exact source of the odors. To determine whether Williams was the source of the odors, Sutley told Williams to get out of the car and stand between the trunk of the Navigator and the hood of the patrol car. As Williams got out Sutley saw a bulge in Williams' front pocket. While they stood between the cars Sutley was still unable to determine the source of the odors thus he told Williams to sit in the front seat of his squad car. As Sutley ran the tag and license, Williams said he was going from Houston to Atlanta. Sutley knew Houston is a source city for narcotics and Atlanta is a distribution point for narcotics. When the license and registration information came back clear, Sutley gave Williams a warning citation. After

...

Sutley gave Williams back his license and registration, he obtained verbal and written consent from Williams to search the car. The consent form indicates it was 3:34 p.m. when Williams signed the consent to search form. Davis also signed the form as a witness. During the search, Sutley found an open container of alcohol in the car but no other tangible evidence of criminal activity. After searching the vehicle, Sutley approached Williams and asked him about the bulge in Williams' pocket. Williams said the bulge was money. Sutley asked Williams to remove the money and questioned Williams about its origin. Williams pulled approximately $4,000 in United States currency from his pants which he said was money earned from his job as a record producer. After conferring with Herman, Sutley seized the currency at approximately 4:10 p.m. Later investigation revealed part of the currency was the official buy money used by the CI to purchase the narcotics from Williams.

In addition to the testimony, several exhibits were admitted during the hearing including the consent to search, warning citation, and Felony Apprehension Patrol Report. The pleadings, testimony, and exhibits were all considered in the Court's review of the suppression motion. Further, the Court also considered Sutley's termination as a Alabama State Trooper and the circumstances surrounding it. Specifically, Sutley was terminated on October 31, 2009 for misconduct related to mishandling seized evidence.

## II.  DISCUSSION AND ANALYSIS

Williams seeks suppression under the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures." U.S. CONST. AMEND. IV.  Warrantless searches and seizures are per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (citations omitted).  The parties do not contest Sutley's basis to conduct the traffic stop.  Further, the Court finds the traffic stop to be reasonable under the circumstances.  Sutley saw Williams speeding and changing lanes without a signal - either is cause to justify a traffic stop.  Further, Williams consented to the search of the vehicle which renders that search permissible.  Williams objects to his continued detention after the investigation of the traffic offenses was complete, the inquiry into the bulge in his pocket, and the seizure of approximately $4,000 in his pockets.

"In the ordinary case, the Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983).  However, "the Court has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been held impermissible." *Segura v. United States*, 468 U.S. 796, 806, 104 S.Ct. 3380, 3386, 82 L.Ed.2d 599 (1984). Further, the Court has permitted warrantless seizures in the case where "the occupants of the car could have removed the 'instruments or fruits of crime' before the search."  "Underlying these decisions is a belief that society's interest in the discovery and protection of

incriminating evidence from removal or destruction can supersede, at least for a limited period, a person's possessory interest in property, provided that there is probable cause to believe that that property is associated with criminal activity." *Id*. at 809, 104 S.Ct. at 3387 (citing *Place*, 462 U.S. 696, 103 S.Ct. 2637). "Probable cause for a search exists when under the totality of the circumstances 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

As a preliminary matter, the Court considered the circumstances surrounding Sutley's termination, but still finds Sutley's testimony about the events of this case to be credible. Sutley testified that his seizure of the money was primarily based upon his conversation with Herman wherein he was told that Williams was recently involved in a controlled buy transaction and his professional experience that the carrying of large amounts of cash frequently related to drug activity. *See also United States v. Thomas*, 913 F.2d 1111, 1117 (4th Cir. 1998) ("the possession of unusually large amounts of cash...may be circumstantial evidence of drug trafficking."). Based on the above, the Court concludes there was probable cause to believe the $4,000 associated with criminal activity and that Sutley's seizure of the money was necessary to prevent its removal or destruction.

In addition, even if a Fourth Amendment violation occurred - i.e. even if the seizure was unreasonable - it does not necessarily mean that the exclusionary rule applies. *Herring*

*v. United States*, — U.S. — , 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009). The Supreme Court held that the exclusionary rule should only be applied when the benefits of deterrence must outweigh the costs to society and will "deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." While the Court does not believe a constitutional violation occurred, even if it did, the error does not rise to the level requiring suppression. The effect of suppression here would be marginal at best.

### III. CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the recommendation of the Magistrate Judge that *Defendant's Motion to Suppress* (Doc. 12) be **DENIED**.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation not later than **December 20, 2010.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

    DONE this 6th day of December, 2010.

                              /s/ Terry F. Moorer
                              TERRY F. MOORER
                              UNITED STATES MAGISTRATE JUDGE